UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 3:24-308 |
| FRANK SUESS, *et al.*, | : | (JUDGE MANNION) |
| Defendants | : | |

## MEMORANDUM

Pending before the court is defendant Luis Salgado's motion *in limine* to exclude evidence pursuant to Federal Rule of Evidence 404(b). (**Doc. 194**). Specifically, he seeks exclusion of evidence relating to his business relationships with various pharmacies in 2019 and 2020, as well as evidence of his alleged participation in a conspiracy to pay and receive kickbacks in relation to billing for COVID-19 tests. For the reasons stated herein, the motion will be **DENIED IN PART** with respect to the business relationships evidence. The court will withhold judgment until trial with respect to the COVID-19 tests evidence.

## I.    BACKGROUND

On November 13, 2024, a federal grand jury issued a 55-count indictment against defendants Frank Suess, Melissa Driscoll, Luis Salgado, Victor Velazco, Warren Pizik, Dave Singh, and Diana Castro. (Doc. 1). The indictment charged the defendants with conspiracy to commit healthcare

fraud, in violation of 18 U.S.C. §1349, ten counts of health care fraud, in violation of 18 U.S.C. §1347, and all but Castro with an additional ten counts of healthcare fraud. *Id.* Additionally, the indictment charged Suess, Velazco, Salgado, Pizik, and Driscoll with conspiracy to violate the anti-kickback statute, in violation of 18 U.S.C. §371, and sixteen counts of violation of the anti-kickback statute, in violation of 42 U.S.C. §§1320a-7b(b)(1)-(2). *Id.* It further charged Suess, Velazco, and Driscoll with another thirteen counts of violation of the anti-kickback statute, conspiracy, in violation of 18 U.S.C. §371, obstruction of criminal investigations of health care offenses, in violation of 18 U.S.C. §1518, and two counts of destruction, alteration, or falsification of records in Federal investigations, in violation of 18 U.S.C. §1519. *Id.*

The charges stem from an alleged fraud scheme in which medically unnecessary prescriptions for "footbaths," containing a variety of prescription drugs, and solicited by marketers, were filled, netting profits for the owners of the pharmacies filling them and their co-conspirators. (Doc. 1).

According to the indictment, Salgado's "responsibility was to identify beneficiaries whose insurance providers could be billed for high-cost prescription drugs." *Id.*, ¶ 51. In return, Salgado, through his company MedX

- 2 -

Marketing Solutions LLC ("MedX"), allegedly received kickbacks. *Id.*, ¶¶ 114-126.

On March 20, 2026, Salgado filed the present motion and an accompanying brief in support. (Docs. 194, 195). On April 10, 2026, the Government filed its brief in opposition. (Doc. 218). Finally, on April 17, 2026, Salgado filed a reply brief to the Government's brief in opposition. (Doc. 224). The motion is thus ripe for disposition.

## II.   LEGAL STANDARD

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017). On a motion *in limine*, evidence should only be excluded "when the evidence is clearly inadmissible on all potential grounds." *Id.* Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. *Abrams v. Lightolier*, 50 F.3d 1204, 1213 (3d Cir. 1995); *Bernardsville Bd. Of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial." *Ridolfi v. State Farm Mutual Auto. Ins. Co.*, 2017 WL 3198006, *2 (M.D.Pa. 2017). Further, "[c]ourts may exercise this

discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Id.*

"A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." *Tartaglione*, 228 F.Supp.3d at 406. "Further, a trial court's ruling on a motion *in limine* is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.'" *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)).

## III.    DISCUSSION

Evidence of prior bad acts "may be admissible" to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Government intends to offer evidence of Salgado's business relationships with pharmacies in 2019 and 2020, as well as evidence of his alleged participation in a conspiracy to pay and receive kickbacks in relation to billing for COVID-19 tests. Specifically, the Government proffers that his business relationships in 2019 and 2020 "will demonstrate that the movement from one pharmacy to another was a key aspect of his ability to continue generating revenue from prescription drugs such as foot baths . . . [and that his] marketing relationships with pharmacies likewise took place in

- 4 -

serial fashion." (Doc. 195-1 at 7). Further, the Government asserts that Salgado "after carrying out the fraud and kickback scheme relating to foot baths, conspired to pay and did pay, and conspired to receive and did receive, kickbacks in order to be able to bill for COVID19 tests," and that this evidence is admissible as it shows "motive, intent, knowledge, absence of mistake, and lack of accident." *Id.*

With respect to Salgado's business relationships, the Government argues that "Salgado's overall pattern of conduct demonstrates his knowledge that his business relationships with pharmacies were inherently short lived. They were designed to obtain large amounts of money from a given pharmacy in a short period of time, before moving on to other pharmacies." (Doc. 218 at 18-19). The Government also argues that "a rational factfinder, when assessing whether Salgado possessed the requisite *mens rea*, could rely on the rapid surge and termination of such relationships as a clear sign, to a person of ordinary intelligence and caution, that these relationships were not lawful." *Id.* The court agrees. Evidence of Salgado's relationships with pharmacies is admissible to prove motive, knowledge, plan, and absence of mistake.

As for the alleged conspiracy involving COVID-19 tests, the Government intends to offer evidence thereof "[i]f at trial, Luis Salgado were

- 5 -

to contend, either directly or through counsel, that he lacked knowledge of the illicit character of profit-based commission payments to MedX Marketing Solutions." (Doc. 195-1 at 7). Salgado, however, argues that because the alleged COVID-19 related conduct occurred after the alleged crimes in this case, the evidence is inadmissible. (Doc. 224 at 6) ("inferring willfulness in this counter-chronological order, which seems to be what the government is attempting to do, involves a propensity inference: Salgado knew the illegality of what he was doing in 2021, which makes him a bad guy – so he probably knew the illegality of what he was doing in 2019-2020 as well. Knowledge transfers forward, not backwards, so the propensity inference is necessary").

In *United States v. Bergrin*, the Third Circuit considered this issue. 682 F.3d 261 (3d Cir. 2012). In determining whether a district court erred in dismissing the probative value of subsequent bad acts evidence, the court noted:

> we agree with the government that the District Court observed an unwarranted analytical distinction between a "prior bad act" and a "subsequent bad act," . . . Rule 404(b) refers to evidence of crimes, wrongs, or other acts, saying nothing about whether the act in question is a "prior" or "subsequent act" act. That makes sense because light can be shed on motive, intent, and the other issues listed in Rule 404(b)(2) as much by a subsequent course of behavior as it can by a prior one . . . So

> although we once questioned, in dicta "[t]he logic of showing prior intent or knowledge by proof of subsequent activity," *United States v. Boyd*, 595 F.2d 120, 126 (3d Cir. 1978), the District Court erred to the extent it dismissed the probative value of subsequent acts evidence.

*Id.* at 281, fn. 25 (internal citations omitted).

Here, the Government claims that "testimony, corroborated by electronic communications, will show that Salgado understood (i.e., had knowledge) that there was a prohibition on paying and receiving kickbacks that were based on referrals of completed orders . . . [and that it] will seek to admit such evidence in response to Salgado's denial, either directly or through counsel, that he did not understand the [anti-kickback statute's] prohibition on profit-based remuneration tied to completed orders." (Doc. 218 at 21). It is unclear what this evidence will suggest about when Salgado obtained such knowledge.

Given these circumstances, the court will withhold judgment with respect to the admissibility of evidence relating to the alleged scheme involving COVID-19 tests until trial, when the court has had the ability to place it within the entire context of the evidence presented.

## IV.    CONCLUSION

For the foregoing reasons, defendant Luis Salgado's motion to exclude evidence pursuant to Federal Rule of Evidence 404(b) will be **DENIED IN PART** with respect to the admissibility of Salgado's business relationships with pharmacies. The court will withhold judgment with respect to the COVID-19 testing evidence. An appropriate order shall issue.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 4/27/26

24-308-06

- 8 -